# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| TIMOTHY W. KRAMER, | : | PRISONER CIVIL RIGHTS |
| GDC No. 375504, | : | 42 U.S.C. § 1983 |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:12-CV-2114-JEC-JSA |
| | : | |
| WARDEN WIGGINS; et al.; | : | |
|     Defendants. | : | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Before the Court is Plaintiff Timothy W. Kramer's *pro se* civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff has been granted *in forma pauperis* status, and the matter is before the Court for a frivolity screening pursuant to 28 U.S.C. § 1915A.

I.    28 U.S.C. § 1915A Frivolity Review

Pursuant to 28 U.S.C. § 1915A, a federal court is required to conduct an initial screening of a prisoner complaint to determine whether the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. A claim is frivolous, and must be dismissed, when it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008). A

district court also may dismiss a complaint if the alleged facts do not state a plausible claim for relief. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the deprivation occurred under color of state law. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). If a plaintiff cannot satisfy those requirements, or fails to provide factual allegations in support of the claim, the complaint may be dismissed. *Id.* at 737-38.

II. Discussion

A. Plaintiff's Allegations

Plaintiff has sued Clayton County Transitional Center ("CCTC") Warden Wiggins and Administrative Assistant Jane/John Doe, and Georgia Department of Corrections ("the Board") Assistant Director Thurman L. Henderson and Administrative Assistant Jane/John Doe. Plaintiff complains that: (1) in January, 2010, he was transferred to CCTC for a work release program; (2) while at CCTC, administrative personnel Jane/John Doe changed his name to "Kreamer" with no

2

reason or notice; (3) Plaintiff has never been convicted or sentenced as Timothy "Kreamer" and his real name is Timothy "Kramer"; (4) Plaintiff was laid off from work release in August, 2010, because of new management at the temporary agency for which he worked that apparently decided not to hire prisoners convicted of violent crimes; (5) in the parole summary report Warden Wiggins sent to the Board, he referred to Plaintiff as the incorrect "Kreamer," which Plaintiff contends caused the "last parole decision to be rescinded;" (6) Plaintiff then was sent to Jackson Diagnostic and Classification Prison as a "sleeper" under the name of "Kreamer";[1] (7) in September, 2010, Plaintiff was sent to Macon State Prison and was issued a new identification with the name "Kreamer"; (8) Plaintiff's annual parole review, which had been held during the month of June since 2001, did not take place in June of 2011 or 2012, despite a 2001 agreement in federal court that Plaintiff would be reviewed annually;[2] and (9) Plaintiff received a letter dated

---

[1] A "sleeper" is an inmate who is physically transferred to a different prison while remaining assigned to the transferor prison. *Daker v. Ferraro*, No. 1:03-CV-2526-RWS, 2004 WL 5459957, at *2 (N.D. Ga. Nov. 24, 2004).

[2] Plaintiff refers to the case of *Garner v. Jones*, Civil Action No. 1:95-CV-3012-WCO, in which Plaintiff was granted a motion to intervene in order to bring an *ex post facto* challenge to a new Board regulation that changed (after the date his crime was committed) the frequency with which inmates serving life sentences would be considered for parole. *Id.* Interestingly, Plaintiff is listed on the docket

3

March 15, 2012, addressed to "Kreamer," which stated that Plaintiff had been denied parole and that the Board would review Plaintiff's status again in October, 2012. Plaintiff seeks equitable and monetary damages.

B. Analysis of Plaintiff's Claims

1. Name Change

Plaintiff has failed to state a cognizable claim under § 1983 with regard to the fact that prison officials have "changed" and/or misspelled his name. "[N]egligently . . . misspelling a name simply do[es] not rise to the level of constitutional torts[.] . . ." *McGovern v. Mississippi Dep't of Corr.*, No. 3:12CV62-DPJ-FKB, 2012 WL 1999121, at *3 (S.D. Miss. June 4, 2012); *see also O'Malley v. California Dep't of Corr.*, No. C93-2862 EFC, 1993 WL 381706, at *1 (N.D. Cal. Sept. 17, 1993) (rejecting prisoner's claim that prison officials refused to spell his name correctly because such allegations "fail to rise to the level of a constitutional violation cognizable under § 1983"). Moreover, other than a blanket and conclusory statement that the Board "rescinded" his parole based on the misspelled name, Plaintiff has not alleged that he has been injured by the

---

of this 1995 case as both "Kramer" and "Kreamer." *See id.* (Docket).

4

changed identification.[3] Plaintiff, therefore, has failed to state a cognizable § 1983 claim with regard to the name change. *See McGovern*, 2012 WL 1999121, at *3 (dismissing prisoner's claim that the administrative remedy coordinator misspelled prisoner's name in part because no harm had been alleged as a result of the mistake). *See also Bland v. Lassiter*, Nos. 91-6592, 91-6593, 1992 WL 200755, at *1 (4th Cir. 1992) (rejecting prisoner's § 1983 claim that the prison's refusal to use her married name violated her constitutional rights because, *inter alia*, she still could access prisoner services, mail, healthcare and grievance procedures by both her maiden name and her married name used as an a/k/a).

### 2. Parole Consideration

To the extent that Plaintiff attempts to raise a due process claim regarding parole consideration by the Board, any such claim fails because there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal*

---

[3] Importantly, even though Plaintiff's record on the Georgia Department of Corrections' website is under "Timothy Kraemer," both "Timothy Kramer" and "Timothy W. Kramer" are listed among his six aliases. *See Georgia Department of Corrections Inmate Query*, available at http://www.dcor.state.ga.us/GDC/OffenderQuery/jsp/OffQryRedirector.jsp (last visited January 8, 2013).

5

*and Corr. Complex*, 442 U.S. 1, 7 (1979). Moreover, the Eleventh Circuit has held that Georgia's parole system does not create a liberty interest in parole implicating the protection of the Due Process Clause. *Sultenfuss v. Snow*, 35 F.3d 1494, 1499-1501 (11th Cir. 1994). *See also McGoy v. Ray*, 164 F. App'x 876, 879 (11th Cir. 2006) (citing *Sultenfuss* and stating that "Georgia's parole process does not create a liberty interest protected by the Due Process Clause."). The Board has broad and unfettered discretion in reaching parole decisions as to each inmate based upon their individual history and circumstances, and is not required to reach any particular result in a given case, to adhere to any uniform standard of review, or to abide by the parole guidelines in administering parole. *Sultenfuss*, 35 F.3d at 1499-1501.

Because Georgia's parole system does not place limitations on the Board's discretion sufficient to create a liberty interest in parole, the Board's practices and procedures are generally beyond review. *Id.* Where there is no liberty interest in parole, "'the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness.'" *Heard v. Georgia State Bd. of Pardons and Paroles*, 222 F. App'x 838, 840 (11th Cir. 2007) (quoting *O'Kelley v. Snow*, 53 F. 3d 319, 321 (11th Cir. 1995)). As the Georgia parole

6

system creates no legitimate expectation of parole, Plaintiff has no constitutionally-protected liberty interest in the procedures by which parole decisions are reached. Accordingly, Plaintiff has failed to state a claim for relief with regard to his claim that the Board violated his due process rights by failing to consider him for parole in June of 2011 and June of 2012 in violation of its alleged agreement to annually review his parole. *See, e.g., Staton v. Wainwright*, 665 F.2d 686, 687 (5th Cir. 1982) (holding that Florida parole commission's violation of Florida statute providing that inmate should receive initial parole consideration within a certain amount of time did not violate inmate's due process rights because Florida parole statutes do not create liberty interest in parole).

Plaintiff's *ex post facto* claim based on the alleged extension of time between his parole reconsideration also fails. The Ex Post Facto Clause prohibits States from, *inter alia*, making laws "which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). Plaintiff, however, has not alleged what law, if any, was retroactively applied to him such that his punishment was increased. Instead, it appears that Plaintiff relies upon an alleged "court order" by which he claims the Board was required to consider him every year for parole. As recently noted by U.S. Senior

7

District Judge William C. O'Kelley, Jr. in denying Plaintiff's motion to reopen the 1995 case, however, in that case there was neither a court order nor a written promise between the Board and the Court by which the Board was obligated to annually review Plaintiff's parole. *See Garner*, Civil Action No. 1:95-CV-3012-WCO, at Docket No. 137, p.3). Instead, because the Board sent a letter to Plaintiff in which it voluntarily offered to conduct annual parole consideration, the Court dismissed Plaintiff's *ex post facto* claims as moot. *Id.*

The Board does not appear to have promulgated any official policy having the force or effect of law that would have changed or lessened the frequency of Plaintiff's parole consideration. Although Plaintiff appears to be correct that the Board did not review his parole eligibility in June of 2011 and June of 2012, it did, in fact, consider him in March of 2012 and scheduled his next review for October of that same year.[4] If anything, these allegations indicate that at least in 2012 the Board may have reviewed Plaintiff's parole status more frequently, rather than less frequently as he complains.[5]

---

[4] It is not clear whether the Board did, in fact, consider Plaintiff for parole in October.

[5] Moreover, because the Board considered and denied him parole in March of 2012, he cannot demonstrate that he suffered any injury from the Board's failure

8

Finally, Plaintiff's punishment of two consecutive life terms of imprisonment was not increased by any alleged extension of time between reconsideration or denial of parole. *See Harrell v. Florida Parole Comm'n*, 479 F. App'x 234, 237 (11th Cir. 2012) (affirming dismissal of prisoner's *ex post facto* claim against the Florida Parole Commission for denying him parole because "parole is a discretionary decision of the Commission and [the plaintiff's] punishment, two consecutive life terms imprisonment, was not increased by the denial of parole"). Plaintiff's *ex post facto* claim, therefore, should be dismissed under § 1983. *See id.*

II. Conclusion

Based on the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the instant complaint be **DISMISSED AS FRIVOLOUS** pursuant to 28 U.S.C. § 1915A.

---

to consider him for parole in 2011.

The Clerk is **DIRECTED** to terminate the referral to the undersigned magistrate judge.

**IT IS SO RECOMMENDED** this 10th day of January, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

10